IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00399-CR

 

Jeremy D. Nash,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 278th District Court

Leon County, Texas

Trial Court No. CM-07-458

 



MEMORANDUM  Opinion










 

            Jeremy Nash appeals from a conviction
by a jury for the offense of Injury to a Child causing serious bodily injury.  Tex. Pen. Code Ann. §22.04 (Vernon
2005).  The trial court assessed his punishment at confinement for twenty (20)
years in the Texas Department of Criminal Justice – Institutional Division. 
Nash complains that the trial court erred by admitting photographs of the child
which were not properly authenticated, that the evidence was both legally and
factually insufficient, and that he received ineffective assistance of
counsel.  Because we find no reversible error, we affirm. 

Improper Admission of Evidence

            Nash complains that the trial court
abused its discretion by admitting approximately fifteen photographs into
evidence because the photographs were not properly authenticated.  See Tex. R. Evid. 901.  The photographs
were admitted through the testimony of a physician at the hospital where the
child was treated; however, that physician did not take the photographs or even
see the child on the date the photographs were taken.  That physician first saw
the child several days after the photographs were taken.

            While the rules of evidence do not
require that the person who took the photographs be the sponsoring witness, the
witness must provide testimony, based on personal knowledge, sufficient to
support a finding that the matter in question is what its proponent claims.  See
Tex. R. Evid. 901(a); see also
Huffman v. State, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988) (predicate for
videotape or photograph need not be laid by photographer, subject of
photograph, or person present when photograph taken, and any witness who
observed the subject depicted in photograph may lay predicate).  It is
undisputed that the physician who was the sponsoring witness did not have
personal knowledge of the truth of what was portrayed in the photographs as
depicted that night.

            Assuming without deciding that the
admission of the photographs through this witness was erroneous, we find that
the error, if any, was harmless.  See Tex.
R. App. P. 44.2(b).  Other properly authenticated photographs were
admitted before the jury that contained similar depictions of the child when he
was brought into the hospital.  See Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998) (Overruling an objection to evidence will not
result in reversal when other such evidence was received without objection,
either before or after the complained-of ruling.).  Further, an investigator with Child Protective Services testified in
rebuttal that she had seen the child on the night he was taken to the hospital
and verified that at least seven of the photographs in question accurately
portrayed the child that night based on her personal knowledge.  We overrule
issue one.

Legal and Factual Sufficiency

Nash complains that the evidence was both legally
and factually insufficient for the jury to find that he intentionally or
knowingly caused the child’s injuries beyond a reasonable doubt because the
State’s experts did not conclusively establish that the injuries could not have
been accidental.  In reviewing the legal sufficiency of the evidence to support
a conviction, we view all of the evidence in the light most favorable to the
prosecution in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); Clayton v. State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). 
Furthermore, we must consider all the evidence admitted at trial, even
improperly admitted evidence, when performing a legal sufficiency review.  Clayton,
235 S.W.3d at 778; Moff v. State, 131 S.W.3d 485, 489-90 (Tex. Crim. App. 2004).  The standard of review is the same for direct and circumstantial
evidence cases; circumstantial evidence is as probative as direct evidence
in establishing an actor’s guilt.  Clayton, 235 S.W.3d at 778; Hooper
v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party.  Steadman v. State, 280
S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404,
414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting the
conviction, although legally sufficient, is nevertheless so weak that the
fact-finder’s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the
conviction that the fact-finder’s determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d at 414-15, 417.  To reverse under
the second ground, we must determine, with some objective basis in the record,
that the great weight and preponderance of all the evidence, although legally
sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct
manifest injustice, we must give due deference to the fact-finder’s
determinations, “particularly those determinations concerning the weight and
credibility of the evidence.”  Johnson v. State, 23 S.W.3d 1, 9 (Tex.
Crim. App. 2000); see Steadman, 280 S.W.3d at 246.  Evidence is always
factually sufficient when it preponderates in favor of the conviction.  Steadman,
280 S.W.3d at 247; see Watson, 204 S.W.3d at 417.

In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that we “harbor a
subjective level of reasonable doubt to overturn [the] conviction.”  Watson,
204 S.W.3d at 417.  We cannot conclude that a conviction is clearly wrong or
manifestly unjust simply because we would have decided differently than the
jury or because we disagree with the jury’s resolution of a conflict in the
evidence.  Id.  We may not simply substitute our judgment for the
fact-finder’s.  Johnson, 23 S.W.3d at 12; Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that
a different result is appropriate, we must defer to the jury’s determination of
the weight to be given contradictory testimonial evidence because resolution of
the conflict “often turns on an evaluation of credibility and demeanor,
and those jurors were in attendance when the testimony was delivered.”  Johnson,
23 S.W.3d at 8.  Our deference in this regard safeguards the defendant’s right
to a trial by jury.  Lancon v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008).  A factual sufficiency review of circumstantial evidence is the same
as a review of direct evidence.  King v. State, 29 S.W.3d 556, 565 (Tex.
Crim. App. 2000); Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999) (reasoning that “[c]ircumstantial evidence, by itself, may be enough to
support the jury’s verdict”).

The Facts

            A fifteen-month old child was admitted
to the hospital with an acute subdural hematoma.  The child was covered in
bruises of varying ages, including bruising to the front and back of both of
his ears, his face, trunk, and extremities.  The explanation ultimately given
by Nash was that the child had fallen off of a chair in the bathroom.  He said
that he put the child on the chair when another child in the residence called
to him regarding a video game and he went to help that child in another room,
leaving the injured child alone in the bathroom.  When he came back, the child
had fallen off of the chair.  The child’s mother was Nash’s girlfriend, and
both she and Nash stated that she was sleeping at the time of the incident. 
Both agreed that the child was acting normally earlier in the day, and they
believed that the child’s bruising was caused by an iron deficiency.

A treating physician at the hospital who had
extensive experience in treating child abuse cases stated that based on his
experience and knowledge his opinion was that the brain injury suffered by the
child and the retinal hemorrhaging were inconsistent with the explanation of a
single fall from a chair and iron deficiency.  Such injuries would be caused by
a severe car crash or a fall from several stories high.  The child would have
quickly lost consciousness after the injury.  The child sustained permanent
brain damage due to the injury.  The retinal hemorrhaging and bruising did not
continue while the child was in the hospital, indicating that there was no
undiagnosed medical condition.  The bruising on the front and back of the
child’s ears was not likely caused by an ear infection or by falls where the
child landed on each ear in separate falls, but more likely by someone pulling
or jerking on the ear.  In his opinion, the injury to the child was “the result
of an abusive event.”

            A defense expert neurosurgeon
testified that based on his reviews of the child’s medical records that the
child had suffered from a chronic subdural hematoma, which was a preexisting
condition.  This condition, coupled with a fall from the chair, could result in
the injury sustained by the child.  This physician did not believe that a baby
could be shaken to cause a head injury.  He also relied on a study by a
bioengineer regarding testing conducted using a test dummy to measure
acceleration in short falls and shaking, although the substance of that study
was not further elicited before the jury.  The defense expert disagreed with
the findings of the American Academy of Pediatrics regarding injuries sustained
by young children from falls and regarding child abuse in general.  He did
agree that it would be unusual, though not impossible, for a fall of seventeen
inches as was the height of the chair in question in this case, to cause a
serious head injury.

            The State called an expert witness in
pediatrics with a specialty in child abuse cases in rebuttal who testified that
he disagreed with the findings of the defense expert and did not see the
chronic subdural hematoma as described and demonstrated by the defense expert
on the CT or MRI scans of the child taken at the hospital, and in fact
testified that he did not find the scans to be consistent with a chronic
subdural hematoma.  He affirmatively stated that the injury sustained by the
child could not have been as a result of the fall as described by Nash, but
could have been caused by being struck against a couch, shaken vigorously and
slammed into an object, or hit by a car or baseball bat.  No one was able to
determine specifically what caused the child’s injury based on the x-rays.  The
fall also could have been from a higher distance depending on how mobile the
child was at that time.  

It was for the jury, as the trier of fact, to
resolve the conflicting expert opinions regarding the cause of the child’s
injuries.  Viewing the evidence in the light most favorable to the jury's
verdict, and thus assuming that the jury believed the State's experts and
discounted the testimony of the defense experts, the evidence is legally sufficient
to support a finding beyond a reasonable doubt that Nash was the perpetrator of
the injuries sustained by the child.  He was admittedly the only caretaker of
the child at the time of the injury.  The testimony showed that his explanation
of the head injury was inconsistent with a short fall.  The child was acting
normally up until the injury, and had eaten a cheeseburger earlier in the
day.   

Even when all the evidence is considered equally
in our factual sufficiency analysis, including the testimony of the defense
experts, we still must give due deference to the jury's credibility
determinations.  It was the opinion of the investigator from CPS that Nash had
caused the head injury because he had the availability and opportunity to do
so.  No one told the 911 operator or the EMT that arrived at the scene that the
child had fallen.  The child’s mother stated that the child had bruises from
falling from learning how to pull up and that he had hit his mouth on rails at
the foot of her bed.  Witnesses for Nash testified that he was very upset and
crying that day when the child was injured.  The witnesses had seen him with
his other children and the injured child and he seemed to have a good
relationship with them all.  The State responded with Nash’s former
stepdaughter who alleged that Nash had spanked her hard enough to leave bruises
repeatedly for the eight years he lived with her, her mother, and her
siblings.  The State's evidence is not so weak or the defensive evidence so
strong as to preclude the jury from finding beyond a reasonable doubt that Nash
intentionally or knowingly caused the child’s injury.  Issues two and three are
overruled.

 

Ineffective Assistance of Counsel

            Nash complains in his fourth issue
that he received ineffective assistance of counsel throughout the trial. 
Specifically, he complains that his trial counsel was ineffective by not
objecting to the State’s experts pursuant to rule of evidence 705, by failing
to object to the investigator’s opinion that Nash caused the injuries, by
failing to object to the State’s comment on Nash’s failure to testify, and by
failing to object to the State’s closing argument.  Nash filed a motion for new
trial but did not allege ineffective assistance of counsel in that motion.

Standard of Review

To prevail on an ineffective-assistance claim,
Nash must prove (1) counsel’s representation fell below the objective standard
of reasonableness; and (2) there is a reasonable probability that, but for
counsel’s deficiency, the result of the proceeding would have been different.  Strickland
v. Washington, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  In
considering an ineffective-assistance claim, we indulge a strong presumption that
counsel’s actions fell within the wide range of reasonable professional
behavior and were motivated by sound trial strategy.  Strickland, 466 U.S. at 689; Thompson, 9 S.W.3d at 813; Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  To overcome this presumption, a claim of ineffective
assistance must be firmly demonstrated in the record.  Thompson, 9
S.W.3d at 814.  In most cases, direct appeal is an inadequate vehicle for
raising such a claim because the record is generally undeveloped and cannot
adequately reflect the motives behind trial counsel’s actions.  Rylander v.
State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003); Thompson, 9
S.W.3d at 813-14. 

When the record is silent regarding trial
counsel’s strategy, we will not find deficient performance unless the
challenged conduct was “so outrageous that no competent attorney would have
engaged in it.”  Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); Robinson v. State, 16 S.W.3d 808, 813 n. 7 (Tex. Crim. App.
2000).  In rare cases, however, the record can be sufficient to prove that
counsel’s performance was deficient, despite the absence of affirmative
evidence of counsel’s reasoning or strategy.  Id.

It is critical that Nash obtain the necessary
record in the trial court to rebut the Strickland presumption that counsel’s
conduct was strategic for purposes of appeal.  Thompson, 9 S.W.3d at
814; McCullough v. State, 116 S.W.3d 86, 92 (Tex. App.—Houston [14th
Dist.] 2001, pet. ref'd.).  This kind of record is best developed in a hearing
on a motion for new trial, or by an application for a writ of habeas corpus.  See
 Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); McCullough,
116 S.W.3d at 92.  Without evidence of the strategy and methods involved
concerning counsel’s actions at trial, the appellate court will presume sound
trial strategy.  See Thompson, 9 S.W.3d at 814.  The record is silent as
to any trial strategy by counsel.  Except as stated above, when the record is
silent as to counsel’s reason for failing to act in some manner, the appellant
fails to rebut the presumption that counsel acted reasonably.  See Thompson,
9 S.W.3d at 814.  

 

Expert Testimony

            Nash complains that he received
ineffective assistance of counsel because the judge was not asked to make a
ruling at the conclusion of the preliminary hearing conducted outside of the
presence of the jury prior to the first State expert’s testimony and that the
testimony should have been excluded because the doctor did not identify the
rate of error in the studies on which he relied.  However, the rate of error is
only one of a list of non-exclusive factors that the Court of Criminal Appeals
has recently stated “could influence a trial court’s determination of
reliability.”  Laster v. State, 280 S.W.3d 235, 241 (Tex. Crim. App.
2009) (citing Kelly v. State, 824 S.W.2d 568, 573 (Tex. Crim. App.
1992)) (emphasis added).  A finding regarding the rate of error is not
mandatory.  The testimony would not have been excludable on this sole basis
when taken with the entirety of the expert’s testimony.  Nash does not
challenge the admissibility of the scientific testimony on any other basis. 
Therefore, Nash fails to meet the first prong of Strickland on this
complaint.

Opinion Testimony, Comment on Failure to Testify,
Improper Jury Argument

            As to the other complaints regarding whether Nash received
ineffective assistance of counsel, we find that the record is silent as to any
trial strategy by counsel.  See Thompson, 9 S.W.3d at 814.  As such, we
do not find that Nash has developed an adequate record to rebut the presumption
that trial counsel acted reasonably.  We overrule issue four.

Conclusion

            We find that any error in admitting
the photos was harmless.  We find that the evidence was both legally and
factually sufficient to sustain Nash’s conviction.  We find that Nash did not
receive ineffective assistance of counsel based on the failure to challenge the
admissibility of the State’s first expert and that the record is insufficient
for Nash to overcome the presumption that his trial counsel acted reasonably
based on his other complaints.  We affirm the judgment of the trial court.

 

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before
Chief Justice Gray,

            Justice
Reyna, and

            Justice
Davis

Affirmed

Opinion
delivered and filed March 17, 2010

Do
not publish

[CR25]






="font-family: 'CG Times', serif">      Hillcrest does not dispute that a fact issue exists on the question of whether Bowers
disclosed J.L.’s medical records without authorization. Rather, Hillcrest contends that Foster
cannot prevail on her negligent formulation claim because it has policies and procedures to
preserve the confidentiality of patient records. Hillcrest contends that Foster cannot prevail on
her negligent enforcement claim because: (1) Bowers could not “properly access” J.L.’s
medical records in the course and scope of her employment; and (2) Bowers’s performance
review affirmatively demonstrates that Bowers was reprimanded for violating Hillcrest’s
confidentiality policies.
      As stated, Foster’s negligent formulation claim hinges on the issue of whether Hillcrest
exercised reasonable care in formulating confidentiality policies which provide “reasonable
safeguards” to preserve the confidentiality of patient records. See Denton Regl. Med. Ctr.,
947 S.W.2d at 950; see also Tex. Health & Safety Code Ann. § 241.155 (Vernon 2001)
(“A hospital shall adopt and implement reasonable safeguards for the security of all health care
information it maintains.”). Viewed in a light most favorable to Foster, Bowers’s
unauthorized disclosure of J.L.’s medical records raises a genuine issue of material fact on the
question of whether Hillcrest formulated “reasonable safeguards” and constitutes some
evidence that Hillcrest did not.



      With regard to Foster’s negligent enforcement claim, Hillcrest contends that it adequately
enforced its confidentiality policies because Bowers “could not properly access [J.L.’s’]
records in the course and scope of her employment” (i.e., without violating Hillcrest policies). 
As we have already held however, Hillcrest’s argument regarding course and scope of
employment has no application to Foster’s negligent enforcement claim. Moreover, the fact
that Bowers removed the records from Hillcrest premises in apparent violation of Hillcrest
policies raises a genuine issue of material fact on the question of whether Hillcrest adequately
enforced its policies and constitutes some evidence that it did not.
      Accordingly, we sustain Foster’s first point with respect to her negligence claims.
 

      We affirm the judgment with regard to Foster’s claims that Hillcrest violated section
241.152 of the Texas Hospital Licensing Law and committed an invasion of privacy. We
reverse the judgment with regard to Foster’s negligence claims and remand this cause to the
trial court for further proceedings consistent with this opinion.
 
FELIPE REYNA
                                                                   Justice

Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna



      (Chief Justice Gray concurring and dissenting)
Affirmed in part,
reversed and remanded in part
Opinion delivered and filed February 11, 2004
[CV06]